

U.S. Department of Justice

United States Attorney
Eastern District of New York

TH:JPM/DEL
F.# 2020R00637

271 Cadman Plaza East
Brooklyn, New York 11201

January 27, 2022

By ECF and E-mail

The Honorable James R. Cho
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ralph DiMatteo
                Criminal Docket No. 21-466 (DG) (JRC)

Dear Judge Cho:

      The government respectfully submits this letter in opposition to defendant Ralph DiMatteo's application for pretrial release dated January 22, 2022 ("Def. Motion"). See ECF Dkt. No. 205. The government submitted a detention memorandum in this case, see ECF Dkt. No. 20, which sets forth the government's principal arguments for detention with respect to DiMatteo. As outlined in the original detention letter and further detailed herein, the defendant's application should be denied because the defendant, who was the consigliere of the Colombo crime family of La Cosa Nostra (the "Colombo crime family") at the time of his arrest, remains a danger to the community and a high risk for continued criminal activity on bond. The Court should continue the order of detention against DiMatteo.

I.      Background

      On September 8, 2021, a grand jury in this district returned a 19-count indictment (the "Indictment") charging fourteen defendants, including eleven members and associates of the Colombo crime family, with labor racketeering, extortion, money laundering conspiracy and other offenses. DiMatteo is charged in Count One of the Indictment with racketeering, in violation of 18 U.S.C. § 1962(c); Count Two with Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a); Count Three with Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a); Count Four with Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951(a); Count Five with attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a); Count Thirteen with money laundering

conspiracy, in violation of 18 U.S.C. § 1956(h); Count Fourteen with conspiracy to steal and embezzle health care benefit funds, in violation of 18 U.S.C. §§ 371, 664 and 669(a); Count Fifteen with health care fraud conspiracy, in violation of 18 U.S.C. §§ 1349 and 1347; and Count Sixteen with attempted health care fraud, in violation of 18 U.S.C. § 1347.

On September 14, 2021, all charged defendants except for DiMatteo were arrested and arraigned before the Honorable Taryn A. Merkl, United States Magistrate Judge. DiMatteo, who was not home at the time of the arrest, was alerted at approximately 6:30 a.m. that day that law enforcement agents sought his arrest, according to cell phone records and witness interviews. The undersigned Assistant United States Attorneys also instructed DiMatteo's then-attorney to have DiMatteo self-surrender to an FBI agent in Florida. Instead, DiMatteo turned off two cell phones he had used during the government's investigation in an attempt to evade detection by law enforcement. He then used a friend's phone to contact an individual known to be a member of organized crime in Florida and arranged for another individual to pick him up and transport him to a different location. DiMatteo eventually surrendered three days later on Friday, September 17, 2021, in New York. At the arraignment, DiMatteo, through counsel, consented to a permanent order of detention with leave to present a bail application.

On January 22, 2021, DiMatteo filed the instant motion for bail. In his motion, the defendant argues that (1) he poses no risk of flight or danger to the community, and even if so, conditions of release can mitigate any risk, (2) additional considerations, such as his health and the conditions at the Metropolitan Detention Center ("MDC"), require his pretrial release, and (3) release is required in order to review discovery in this case. These arguments downplay the seriousness of the criminal organization and his indisputable leadership role in it.[1] They also minimize the severity and actual harm caused by a years' long scheme by the Colombo crime family to extort, embezzle and launder money from a Queens-based labor union (the "Labor Union") and its associated health care trust fund (the "Health Fund"). In addition, telephone calls recorded by the MDC demonstrate DiMatteo continues to play a role in the operation of the Colombo crime family and have contact with known members, even on monitored calls. Finally, his health conditions and his claims regarding his ability to mount a defense are not sufficient bases for release at this time.

A. DiMatteo's Leadership Role in the Colombo Crime Family

As set forth below, the defendant is an inducted member of the Colombo crime family, a criminal enterprise that continues to engage in violent crimes, extortion, loansharking, drug trafficking and fraud, as charged in the Indictment. At the time of his arrest, DiMatteo was the Colombo crime family's consigliere, the third most powerful member of the crime, as supported by wire intercepts and consensual recordings. For example, on September 1, 2020 (MU #636), as captured on a judicially-authorized wiretap,

---

[1] The following opposition includes transcripts of wire intercepts. These transcripts are partial and in draft form and are subject to revision.

Vincent Ricciardo told Michael Uvino that he had "just got a call from number 3," i.e., the third highest ranking member of the Colombo crime family. Telephone records demonstrated that DiMatteo had just called Vincent Ricciardo. In another example, in consensually-recorded conversations with a Colombo crime family member on April 20 and April 27, 2021, DiMatteo was referred to as "number three," which is another reference to his role as the consigliere of the Colombo crime family.

As the consigliere, DiMatteo met frequently with and relayed orders from Colombo boss and co-defendant Andrew Russo. DiMatteo also met often with lower-level members of the organization, including its various captains, to oversee and promote the criminal affairs of the enterprise, including the charged extortion and money-laundering scheme detailed below.

B. <u>The Extortion Scheme</u>

DiMatteo directly supervised the scheme to extort and infiltrate the Labor Union for the benefit of the Colombo crime family, which included not only collecting salary payments from a Labor Union official, but forcing Labor Union and Health Fund personnel and a consultant to make decisions that would generate a $10,000 or greater monthly kickback to the administration of the Colombo crime family.

As detailed in the government's initial detention memorandum, <u>see</u> ECF Dkt. 20, beginning in at least September 2020 until approximately November 2020, DiMatteo oversaw the infiltration of the Labor Union and Health Fund, speaking and meeting regularly with Vincent Ricciardo about the crime. ECF Dkt. 20 at 8-10. As discussed in the detention memo, intercepted calls in October and November 2020 demonstrate that DiMatteo discussed the plan to take over of the Labor Union and the Health Fund with co-defendant Vincent Ricciardo, learned about Ricciardo's attempts and successful contacts with John Doe #1, and directed Ricciardo to go to Andrew Russo's home, apparently to discuss the scheme in person. In fact, on November 5, 2020, after Vincent Ricciardo met John Doe #1 and delivered a series of demands from the Colombo crime family, Ricciardo called DiMatteo to relay what had transpired during the meeting.

Throughout law enforcement's wiretap interceptions of the scheme, which ran from August 2020 to March 2021, DiMatteo played an active role supervising the scheme and receiving information for the family's administration. On January 28, 2021, at approximately 12:49 p.m., DiMatteo and Vincent Ricciardo discussed the crime family's effort to infiltrate the Labor Union and siphon money from the Health Fund, with DiMatteo expressing displeasure at the progress that had been made:

> DIMATTEO:     When are you coming here?
>
> V. RICCIARDO: I'm coming here in the middle of March.
>
> DIMATTEO:     Middle of March, we're gonna wait a month and a half?

3

| | |
|---|---|
| V. RICCIARDO: | Well things are going slow but they, they, they—I'm not all the way in there yet. |
| DIMATTEO: | Okay, that's no good buddy, you're gonna have to take a trip in, to say hello. |
| V. RICCIARDO: | Alright uh— |
| DIMATTEO: | Everything you, everything you said what's happening? Nothing is happening? |
| V. RICCIARDO: | Of course not, it's going slow, but we're, we're partly in there. |
| DIMATTEO: | You're what? |
| V. RICCIARDO: | We're partly in there. |
| DIMATTEO: | Partly? |
| V. RICCIARDO: | Yes. |
| | . . . |
| DIMATTEO: | You know everything was left in your hands. |
| V. RICCIARDO: | And I'm taking care of it little by little. |
| DIMATTEO: | Okay that's what you wanted, correct? You want it to be in your hands? |
| V. RICCIARDO: | Yes. |

    C.    <u>Relevant Calls from the MDC</u>

In the months since his arrest, DiMatteo has continued to associate with and communicate with members of organized crime, seek their financial assistance, and remain involved in the affairs of the Colombo family.

For instance, as captured on a recorded call made from the MDC, on September 21, 2021, DiMatteo directed a family member to "go on the Avenue, see who's around and not around." The "Avenue" is a reference to the Gravesend section of Brooklyn, where many meetings occurred during the course of the government's investigation in connection to the charged scheme and where members of the Colombo crime family have been observed congregating. DiMatteo's instruction to his relative was likely an attempt to discern who was not present, thereby indicating if anyone had provided information to the

4

government.  In another recorded call on September 22, 2021, DiMatteo again asks the same family member whether another individual, whom the investigation has shown is a member of organized crime ("Member #1"), had visited "the Avenue":

> DIMATTEO:       Did he go to the Avenue?
>
> Family Member:  Yeah, don't worry about it, yeah.

DiMatteo also asked this relative to provide telephone numbers to contact various individuals whom this investigation has demonstrated to be members of organized crime.

   DiMatteo also instructed the same family member, in several calls recorded by the MDC, to be cognizant of law enforcement surveillance and avoid a garage located in the Gravesend section of Brooklyn—which, as discovery productions in this case revealed, was surveilled by law enforcement.  For instance, on September 24, 2021, in a call recorded by the MDC, DiMatteo instructed his relative to "stay off the phones" because of possible FBI surveillance.  On October 1, 2021, in another recorded call, DiMatteo further warned his relative to avoid the garage used by the Colombo crime family as a meeting place:

> DIMATTEO:       [Name], that garage is like a fire over there, you know that right?

On October 9, 2021, in a call recorded by the MDC, DiMatteo instructed his family member to relay the government's surveillance to another known member of organized crime, saying:

> DIMATTEO:       All right, ah, send him my love over there, tell him that garage is like the telephone company, he'll understand.

On October 12, 2021, in a recorded call, DiMatteo called Member #1.  DiMatteo instructed that individual not to go to the garage (DIMATTEO: "Listen, the garage, you and your [UI], don't go there no more.").  DiMatteo discussed with Member #1 whether a captain in the Colombo crime family was cooperating with the government in the charged investigation.  In another recorded call on November 29, 2021, DiMatteo instructed a family member that he would like to see Member #1 in person, likely because an in-person conversation, unlike a telephone call, would not be recorded by the MDC.

> Family Member:  What's good, I'm not good enough for the hour?
>
> DIMATTEO:       For what?
>
> Family Member:  I'm not good enough for the full hour, you need somebody else?
>
> DIMATTEO:       Nah, you're missing the point, ha, somebody, I woulda liked [Member #1] to come so I could talk to him, you

5

>   get it?
>
> Family Member:   Yeah, 100%.

On several recorded calls, DiMatteo also sought financial assistance from members of organized crime, demonstrating his continued connection to and influence in organized crime. Given his supervisory position, relaying such requests was effectively relaying directives for other members of the Colombo family to pay him. For instance, on September 28, 2021, in a call recorded by the MDC, DiMatteo directed a family member to contact a known member of organized crime so that members could contribute to his commissary fund:

> DIMATTEO:   Tell [Member #1] to get in touch with [Member #2], everybody, see if you can get 50 dollars a month out of everybody then I can get taken care of in here so you guys don't have to go for it.

Several days later, on October 6, 2021, DiMatteo again relayed a directive for payments of the Colombo crime family.

> DIMATTEO:   Tell him, those guys like on the Avenue, like [Member #3] and everybody, tell them it takes commissary to be in jail.

II.   <u>Argument</u>

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). In addition, a court may order detention if there is a "serious risk that the [defendant] will . . . obstruct or attempt to obstruct justice, or . . . intimidate . . . a prospective witness," among other things. 18 U.S.C. § 3142(f)(2)(B).

All four factors support DiMatteo's continued detention.

<u>First</u>, DiMatteo is charged with supervising a long-running extortion offense involving threats of violence toward multiple victims in a bid to infiltrate and siphon money from the Labor Union and the Health Fund. When DiMatteo supervised the scheme, his co-defendants threatened victims of the scheme, including by showing up at the Labor Union's offices, frightening its employees into alerting the police and communicating the Colombo crime family's demands to John Doe #1, a top employee at the Labor Union. DiMatteo's continued interested and involvement meant the continuing interest and involvement of the crime family.

6

<u>Second</u>, the weight of the evidence against DiMatteo is overwhelming. The government's evidence includes witness testimony, wiretap intercepts, consensual recordings, call records, text messages, surveillance photographs, banking records and other documentary evidence.

<u>Third</u>, DiMatteo's history and characteristics show detention is warranted here. At the time of his arrest, DiMatteo was the third most powerful member of the Colombo crime family, with the ability to direct other members to act on his behalf. As his communications from the MDC further show, he has continued to contact and direct other organized crime members while incarcerated, including by passing along information about law enforcement surveillance and collecting money from other members due to his leadership position. If released, DiMatteo would have even more opportunities communicate with prohibited persons and continue the business of the Colombo crime family.

<u>Finally</u>, DiMatteo's remaining arguments for pretrial release should be rejected at this time. DiMatteo argues his risk for cardiac issues and vulnerability to COVID-19 should be a basis for release, but he has not alleged he is experiencing any symptoms or the MDC has failed to provide necessary care. Among other things, DiMatteo has described to family members that he has received regular check-ins for chronic medical issues. DiMatteo also argues he cannot prepare for a trial while incarcerated. At this time, DiMatteo provides no indication that he is unable to review the discovery in this case or discuss the government's evidence with his attorney in video or telephone meetings, and a trial date has not yet been set. Accordingly, the Court should reject these arguments.

V.  <u>Conclusion</u>

        For all the reasons stated above, the government respectfully submits that defendant Ralph DiMatteo's application should be denied and the permanent order of detention remain in effect.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:    /s/
        James P. McDonald
        Devon Lash
        Assistant U.S. Attorneys
        (718) 254-7000

cc:    Clerk of Court (JRC)
       Gerald McMahon, Esq. (Counsel for the defendant)